United States District Court
For the Northern District of California

1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    NANCY LANGSTON,                          No. C 08-02560 SI

9             Plaintiff,                      **ORDER DENYING CROSS-MOTIONS
                                              FOR SUMMARY JUDGMENT AND
10     v.                                     REMANDING**

11   NORTH AMERICAN ASSET
     DEVELOPMENT CORPORATION,
12
              Defendant.
13   _____/

14

15          On February 27, 2009, the Court heard oral argument on the parties' cross-motions for summary

16   judgment.  Having considered the arguments of the parties and the papers submitted, and for good cause

17   shown, both parties' motions for summary judgment are DENIED.  The Court remands the case to the

18   plan administrator for further investigation.

19

20                                    **BACKGROUND**

21          This case arises out of the termination of plaintiff's long term disability benefits by defendant

22   North American Asset Development Corporation Group Disability Plan (defendant, or "Plan") on June

23   30, 2007, when Hartford Insurance Company ("Hartford"), the third-party administrator of the Plan,

24   determined that plaintiff no longer met the Plan's definition of "disabled."

25          Plaintiff Nancy Langston worked full time for North American Title Company ("North

26   American") as an escrow officer until she became disabled in November of 2003.  Plaintiff is a

27   beneficiary of the North American Asset Development Corporation Group Disability Plan, which was

28   insured by a Group Long Term Disability Policy ("Policy") issued by Continental Casualty Company

United States District Court
For the Northern District of California

1    (CNA).  The Policy defines disability in two ways: during the elimination period and the following 24

2    months, disability means the inability to perform "the material and substantial duties of *your regular*

3    *occupation*."  POL009.[1]  After the monthly benefit has been payable for 24 months, disability means

4    the inability to engage in *any occupation* for which the beneficiary is qualified.  *Id*.  The Policy provides

5    discretionary authority to determine eligibility for benefits and interpret the Policy's terms.  The Policy

6    provides that, "[w]hen making a benefit determination under the policy, We have discretionary authority

7    to determine Your eligibility for benefits and to interpret the terms and provisions of the policy."

8    POL007.  Hartford is the successor in interest to this Policy and administers it for the Plan.

9          On May 13, 2003, plaintiff stopped working for North American due to numbness, tingling, pain

10   in her left arm, neck, back and shoulder, and headaches.  Plaintiff visited a doctor, who conducted an

11   MRI, EMG, and nerve conductor study.  These tests revealed bulging at several discs and moderate

12   carpal tunnel syndrome.  She returned to work part-time in September 2003, but again had to stop

13   working in December 2004 due to ongoing pain.  In May 2005, plaintiff submitted a claim for long term

14   disability benefits that included an Attending Physician's Statement written by orthopedist Jason Smith,

15   M.D.  Dr. Smith diagnosed plaintiff with cervical myelopathy[2] arising out of her employment and

16   advised her to stop working on December 6, 2004.  Dr. Smith recommended that plaintiff undergo an

17   anterior cervical disc fusion and predicted that she would recover four months after surgery.  Hartford

18   approved plaintiff's claim for disability payments and made the benefits retroactive from November

19   2003.

20         Plaintiff had anterior cervical disc fusion surgery on July 26, 2005.[3]  That month, Hartford

21   received medical records from one of plaintiff's treating physicians, which included two MRIs of

22   plaintiff's spine that were performed in 2003 and 2004.  On July 3, 2006, plaintiff returned to work but

23

24         [1]  The Plan is attached to the Declaration of Donna A. Gatling In Support of Defendant's Motion
     for Summary Judgment (Docket No. 28) and is labeled POL001-27.  The declaration also includes file
25   notes, bates numbered FN001-78, and the administrative record, bates numbered AR0001-857.  The
     Court will refer to these documents by their bates numbers.
26

27         [2]  This is a common spinal cord disorder that leads to pain and discomfort.

28         [3]  This is a procedure in which two vertebra are fused together to decrease motion at a painful
     segment.  It is used to treat damaged discs.

**United States District Court**
For the Northern District of California

had to stop working again on August 7, 2006.  On October 2, 2006, Dr. Smith completed another Attending Physician's Statement, in which he stated that plaintiff was not to perform prolonged walking or standing and that plaintiff was restricted from performing overhead work, pushing, pulling, or prolonged typing.  On November 20, 2006, plaintiff sent Hartford additional information, including an August 24, 2006 MRI, an August 29, 2006 electrodiagnostic study, and a Permanent and Stationary Report written by Dr. Smith on November 13, 2006 for plaintiff's workers' compensation claim.  In the report, Dr. Smith noted that plaintiff still experienced pain in her right arm, neck, and interscapular region, as well as occasional spasms.  Dr. Smith concluded that plaintiff could not work and that sitting or standing for more than 20 minutes could cause her pain to increase significantly.  Her diagnoses included cervical disc displacement, spinal stenosis,[4] disc degeneration, and myelopathy.  AR0312.

On February 21, 2007, Doris Hoffman, a Hartford nurse, reviewed plaintiff's claim for long term disability benefits.  She asked Dr. Smith to provide medical evidence supporting some of the restrictions he had placed on plaintiff, including his determinations that standing for more than 15-20 minutes causes "significant increases in pain" and that she is "unable to return to work."  AR0291-92.

On April 2, 2007, Hartford obtained an independent medical review by Dr. Robert Pick, an orthopedic surgeon.  AR0267-69.  Dr. Pick reviewed plaintiff's medical file but did not examine or speak with her.  Dr. Pick disagreed with Dr. Smith's restrictions and limitations.  Dr. Pick believed that plaintiff "should be able to engage in full-time sedentary . . . work" because "her arthritic condition has been addressed" through fusion surgery.  AR0269.  Dr. Pick attempted to speak with Dr. Smith regarding plaintiff's condition, but was unable to contact him.

On April 12, 2007, Hartford wrote to Dr. Smith to inform him of Dr. Pick's conclusions.  AR0278.  Dr. Smith responded on April 16, 2007, stating, "Please see my previous work restrictions.  She is <u>unable</u> to do even sedentary work as I very clearly stated in my previous notes."  AR0285 (emphasis in original).  Hartford sent plaintiff a summary of Dr. Pick's report.  Hartford also conducted an Employability Assessment based on Dr. Pick's findings to determine whether plaintiff could work in other jobs.  Plaintiff did not participate in the assessment.  The assessment identified several

---

[4] This is a condition that is caused by narrowing of the spinal cord, causing nerve pinching which leads to persistent pain.

3

United States District Court
For the Northern District of California

1   alternative occupations for plaintiff, such as office manager and forms analyst.

2       On April 27, 2007, Hartford notified plaintiff by letter that Hartford was reviewing plaintiff's

3   claim for long term disability benefits. AR0164.  The letter explained that the "own occupation" period

4   for plaintiff's long term disability claim ended on November 12, 2005, but that benefits had been

5   ongoing since that time due to "review of [plaintiff's] LTD claim."  *Id.*  In the same letter, Hartford

6   informed plaintiff that Dr. Pick reached his conclusion that plaintiff was capable of engaging in "full

7   time sedentary work activities" based on Dr. Pick's "review of [plaintiff's] file as well as discussion

8   with Dr. Smith." *Id.*  Plaintiff responded by letter dated May 6, 2007 that on May 4, Dr. Smith told her

9   he was "in total disagreement" with Dr. Pick's review.  AR0165.[5]

10      On June 28, 2007, Hartford informed plaintiff that her benefits were terminated effective June

11  30, 2007 because "you no longer meet the definition of Disability."  AR0166.  The notification

12  acknowledged that plaintiff reported being able to complete "light" household chores for no more than

13  ten minutes, after which time she experienced "pain and fatigue" in her neck.  AR0168.  Cooking was

14  difficult, according to plaintiff, because "looking down or upward" required "painful" motions. *Id.*  In

15  addition, plaintiff also reported being able to use the computer to pay bills for five to ten minutes twice

16  a month.  *Id.*  Based on its review of plaintiff's medical files, including Dr. Pick's report, Hartford

17  concluded that plaintiff was able to "perform gainful alternative occupations," including office manager,

18  purchase-price analyst, and title search manager.  *Id.*  Plaintiff therefore did not meet the Plan's

19  requirement of being unable to work in "any occupation" and consequently did not qualify as disabled.

20  AR0170.

21      The letter also explained that plaintiff had become eligible for benefits on November 12, 2003

22  and that the "own occupation" period of her benefits terminated on November 11, 2005, but that

23  Hartford had permitted her to continue receiving benefits since then "to allow for ongoing review of

27  _____

28      [5] Defendant concedes that in fact Dr. Pick never spoke with Dr. Smith.  Def. Mot. at 6. [Docket No. 25]

4

United States District Court

For the Northern District of California

1   [her] claim." AR0167.[6]

2      In a report dated August 1, 2007, Dr. Smith wrote that plaintiff "continues to have significant

3   neck pain, stiffness, and disability. The pain is so severe that it requires her to lie down for relief. This

4   happens at least a couple of times in an hour." AR0212. Dr. Smith "strongly" recommended that

5   plaintiff begin consulting with a pain management specialist because plaintiff "uses a significant amount

6   of medicines" and a specialist could help her manage the pain. AR0212.

7      On December 19, 2007, Hartford received plaintiff's complaint from the California Department

8   of Insurance. Shortly after responding to this claim, Hartford received a formal appeal from plaintiff.

9   The appeal included a November 6, 2007 report from chronic pain specialist Dr. David Padgett. Dr.

10  Padgett did not opine on plaintiff's ability to work but described her as being unable to perform

11  overhead motion with her arms. He also detailed a plan for helping plaintiff achieve her goal of taking

12  less pain medication. AR0124.

13     On February 13, 2008, Dr. Leonid Topper, a neurologist, and Dr. Clarence Fossier, an orthopedic

14  surgeon, prepared medical record reviews for Hartford. Dr. Topper concluded that plaintiff had been

15  able to work full-time (with limitations such as five-minute stretch breaks after each hour of sitting and

16  limiting typing to thirty minutes at a time) since June 28, 2007. AR0009. He predicted that due to "the

17  chronic nature of [plaintiff's] degenerative spine disease and carpal tunnel syndrome," the limitations

18  would be permanent. *Id.* Dr. Fossier concurred that plaintiff was able to work full time and that she

19  required limitations including being able to sit for six hours out of an eight-hour day and "lift no more

20  than 10 pounds occasionally." AR0011. He also determined that she was able to reach overhead up to

21  one-third of the time and that she had "no contradindication" for use of her hand or feet. *Id.* Dr. Fossier

22  also noted that most of plaintiff's current complaints "such as having to lie down several times an hour

23

24      [6] On August 23, 2007, Dr. Smith sent Hartford a revised October 2, 2006, Attending Physician's
25  Statement, purportedly because of "documentation errors, omissions, and the lack of comprehensiveness
    of the original report." AR0223-25. Defendant notes that the revised Statement was still signed October
26  2, 2006, but contained new information written in different handwriting than the original. (*Compare*
    AR0223-25 *with* AR0315-16). The revised statement contained added limitations, such as that plaintiff
27  could not engage in prolonged sitting or looking down. Defendant implies in its brief that the
    inconsistency is due to bad faith on the part of Dr. Smith because the handwriting on the two reports
28  differs. The Court finds no evidence in the record to support this allegation. The different handwriting
    in the two letters could easily be due to two different people transcribing Dr. Smith's notes.

and her 'neural pains,' are self reported and do not have an objective basis."  AR0012.  On March 11, 2008, Hartford notified plaintiff that the initial decision to terminate her benefits had been upheld.  On May 21, 2008, plaintiff filed the instant action with this Court, seeking benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial."  *See T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party.  *See T. W. Electric*, 809 F.2d at 630-31 (*citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F. 2d 1504, 1509 (9th Cir. 1991). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).

## DISCUSSION

**1.    Standard of Review**

The parties dispute what standard of review the Court should apply to the decision to terminate plaintiff's disability benefits.  "The Supreme Court has held that a denial of benefits 'is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary

United States District Court
For the Northern District of California

1   authority to determine eligibility for benefits or to construe the terms of the plan.'" *Burke v. Pitney*

2   *Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1023 (9th Cir. 2008) (quoting *Firestone Tire &*

3   *Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "When a plan unambiguously gives the plan

4   administrator discretion to determine eligibility or construe the plan's terms, a deferential abuse of

5   discretion standard is applicable." *Id.* at 1023-24 (citing *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d

6   955, 963 (9th Cir. 2006) (en banc)). In this case, the Policy provides discretionary authority to CNA

7   (Hartford's predecessor in interest) to determine eligibility for benefits and interpret the Policy's terms.

8   Accordingly, the Court must apply an abuse of discretion standard.

9

10   **2.      Conflict of Interest**

11          The Court must also determine whether the plan administrator operated under a conflict of

12   interest in its determination of plaintiff's eligibility for benefits, and if so, how much weight that conflict

13   should be given when the Court evaluates whether the plan administrator has abused its discretion. *See*

14   *Metropolitan Life Ins. Co. v. Glenn*, __ U.S. __, 128 S. Ct. 2343, 2348 (2008) ("If 'a benefit plan gives

15   discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must

16   be *weighed as a factor* in determining whether there is an abuse of discretion.'") (quoting *Firestone*, 489

17   U.S. at 115) (emphasis added in *Glenn*).

18          In this case, as noted above, a structural conflict exists because Hartford both funded benefits

19   and administered claims under the Policy. In *Glenn*, the Supreme Court held that the existence of a

20   structural conflict of interest is more important where "circumstances suggest a higher likelihood that

21   it affected the benefits decision." 128 S. Ct. at 2351. Relevant factors to this determination are whether

22   the insurance company administrator "has a history of biased claims administration," and whether the

23   administrator "has taken active steps to reduce potential bias and to promote accuracy, for example, by

24   walling off claims administrators from those interested in firm finances, or by imposing management

25   checks that penalize inaccurate decision-making irrespective of whom the inaccuracy benefits." *Id.*

26   Another relevant factor is whether the defendant has encouraged the plaintiff "to argue to the Social

27   Security Administration that she could do no work, received the bulk of the benefits of her success in

28   doing so . . . and then ignored the agency's finding in concluding that [plaintiff] could in fact do

United States District Court
For the Northern District of California

1   sedentary work." *Glenn*, 128 S. Ct. at 2352.  Finally, a court "may weigh a conflict more heavily if, for

2   example, the administrator . . . fails to adequately investigate a claim or ask the plaintiff for necessary

3   evidence [or] fails to credit a claimant's reliable evidence . . . ."  *Abatie*, 458 F.3d at 968 (internal

4   citations omitted).

5

6       **A.      Parties' arguments regarding Hartford's structural conflict**

7

8                       i.       Plaintiff's evidence

9       Plaintiff urges the Court to apply a "heavy dose" of skepticism in its abuse of discretion review.

10  As explained above, this case is reviewed under an abuse of discretion standard.  The Court may

11  consider "only evidence within the administrative record at the time of the administrator's decision.

12  This restriction is based on the principle that the federal district courts should not function as substitute

13  plan administrators, and that expanding the record on appeal would frustrate the goal of prompt

14  resolution of claims by the fiduciary under the ERISA scheme."  *Silver v. Executive Car Leasing Long-*

15  *Term Disability Plan*, 466 F.3d 727, 732 (9th Cir. 2006).  While a district court may consider evidence

16  outside the administrative record to decide whether a conflict of interest affected the decision-making

17  process, once the conflict issue has been decided, "the decision on the merits . . . must rest on the

18  administrative record."  *Abatie*, 458 F.3d at 970.

19      First, plaintiff submits three articles from the *Journal of Bone and Joint Surgery*, one article from

20  the *Spine Journal*, and a 1986 publication entitled *Report of the Commission on the Evaluation of Pain.*

21  *See* Decl. of Laurence F. Padway in Supp. of Pl. Mot. for Summ. J. ("Padway Decl. I"), at exs. 1, 2, 4,

22  5. [Docket No. 30]  It appears that plaintiff presents these medical studies in support of her merits

23  argument, to show that Hartford made the wrong decision regarding plaintiff's condition.  The Court

24  cannot consider this evidence as doing so would improperly expand the record on appeal.  Accordingly,

25  the Court GRANTS defendant's motion to strike these exhibits.

26      Second, plaintiff submits what purport to be the transcripts of depositions taken of Dr. Pick in

27  Massachusetts cases in 1994, 2005, and 2006.  *See* Padway Decl. II, exs. 6, 7 (2005 and 2006

28  depositions); Padway Decl. I, ex. 3 (1994 deposition).  Plaintiff relies on the 2005 and 2006 depositions

to show that Dr. Pick is biased. *See* Pl. Opp. at 7 [Docket No. 35]  While extrinsic evidence is permissible on the question of bias, plaintiff does not attempt to authenticate the documents or explain why they are admissible. The Court therefore cannot consider this evidence at summary judgment. *See* Fed. R. Civ. P. 56(e). Plaintiff relies on the 1994 deposition to show that Dr. Pick reached the wrong conclusion by discounting plaintiff's self-reported pain. *See* Pl. Mot. for Summ. J. at 10. [Docket No. 29] Again, the Court cannot consider evidence beyond the administrative record if it is offered to show that defendant reached the wrong decision on the merits. Accordingly, the Court GRANTS defendant's motion to strike the Dr. Pick depositions.[7]

Finally, plaintiff requests that the Court take judicial notice of discovery filed in *Caplan v. CNA Short Term Disability Plan*, No. 06-5865, 2007 U.S. Dist. LEXIS 43676 (N.D. Cal. June 1, 2007).  In that case, Hartford used University Disability Consortium ("UDC") as a source of "independent" medical reports, and the court found that the medical reports from doctors with UDC were apparently biased, which cast doubt on the neutrality of Hartford's decision making process. Plaintiff asserts that the finding in *Caplan* should "act as collateral estoppel against Hartford on the issue of bias here." Pl. Opp. at 7, Docket No. 35. Plaintiff admits, however, that Hartford used a different vendor in this case. Plaintiff does not produce any evidence that the vendor Hartford currently uses is biased. Nonetheless, the Court finds that the fact that a court has found Hartford to use biased vendors in the past is some evidence of past "biased claims administration." *See Glenn*, 128 S. Ct. at 2351. This last factor weighs in favor of weighing the structural conflict more heavily as a factor in the Court's abuse of discretion review.

          ii.     Defendant's evidence

For its part, defendant contends that because Hartford took active steps to minimize its conflict, the conflict should not weigh heavily in the Court's analysis. In support of this position, defendant

---

[7] Defendant also moves to strike portions of plaintiff's reply brief because it raises new theories and attaches new evidence. The Court agrees that it is improper for plaintiff to raise new arguments in her reply brief, and therefore has not considered these arguments or evidence in reaching its decision. *See Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 843 n. 6 (9th Cir. 2004); *United States v. Rearden*, 349 F.3d 608, 614 n.2 (9th Cir. 2003).

submits the declaration of Bruce Luddy, Hartford's Director of Litigation and Appeals. However, plaintiff points out that in defendant's initial disclosures, it did not identify Mr. Luddy as a potential witness or as someone with relevant knowledge. Decl. of Laurence F. Padway in Opp. to Def. Mot. for Summ. J. ("Padway Decl. II"), at ex. 1 (Def. Initial Disclosures). [Docket No. 36] Even if defendant somehow did not anticipate relying on Mr. Luddy's declaration (this possibility seems remote), Federal Rule of Civil Procedure 26(e) requires defendant to supplement its initial disclosures "if the party learns that in some material respect the disclosure . . . is incomplete . . . and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. Pro. 26(e). Rule 37(c) states that if any party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion [or] at a hearing . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. Pro. 37(c). Here, defendant's failure to disclose Mr. Luddy is neither justified nor harmless. Had plaintiff known that defendant planned to produce evidence of measures it has taken to mitigate its structural conflict, plaintiff could have propounded related discovery requests. Thus, the Court disregards Mr. Luddy's declaration in its analysis of Hartford's structural conflict.

### B.    Evidence of bias from the administrative record

Although plaintiff produces little extrinsic evidence of the degree of Hartford's conflict of interest, there is some evidence in the administrative record of circumstances that "suggest a higher likelihood" that Hartford's structural conflict of interest affected its decision in this case. *Glenn*, 128 S. Ct. at 2348. The record indicates that Hartford failed to adequately investigate plaintiff's claim, failed to ask the plaintiff for necessary evidence, gave plaintiff incorrect information, and failed to credit the plaintiff's reliable evidence, and thus that Hartford's conflict influenced its decision.

First, there is evidence that Hartford "failed to adequately investigate" plaintiff's claim. *Abatie*, 458 F.3d at 968. The Ninth Circuit has interpreted ERISA regulations as "calling for a meaningful dialogue between claims administrator and beneficiary." *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 870 (9th Cir. 2008) (citation omitted). In the instant case, there is no evidence that Hartford's doctors ever spoke with plaintiff or her treating physicians. The record reflects

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

that Dr. Pick called Dr. Smith on March 20, 29, and 30.  On March 30, Dr. Smith returned Dr. Pick's calls and left a message on his answering machine.  However, instead of promptly returning the call, Dr. Pick did not again attempt to contact Dr. Smith until April 2.  It does not appear that Dr. Pick made a good faith effort to reach Dr. Smith, for example by coordinating with Dr. Smith's secretary to find a mutually agreeable time to speak.  Drs. Fossier and Topper, the doctors who performed "independent" medical reviews for Hartford when plaintiff appealed her initial termination of benefits, did not attempt to contact plaintiff at all and were "unsuccessful" in their attempts to speak with Dr. Smith.  AR0007, 0011.

Second, it appears that at crucial points in its consideration of plaintiff's claim, Hartford failed to inform plaintiff that it had requested information from her doctor.  *See Saffon*, 522 F.3d at 873 n.4 (noting that "[i]f a claims administrator communicates with a doctor who has treated a beneficiary, it must disclose that fact to the patient at a meaningful time").  Hartford sent Dr. Smith a letter on February 21, 2007, requesting "clarification" of plaintiff's limitations, and "medical evidence on which these additional restrictions are based."  AR0291.  The letter requested a response "by the end of the day on 2/28/2007."  AR0292.  Hartford indicated that if it received no response by that time, it would "make a decision on the claim with the information [it has] available."  *Id.*  There is no indication that this request was also sent to plaintiff.  In another instance, on April 12, 2007, Hartford sent Dr. Smith a letter informing him that Dr. Pick had reviewed plaintiff's file and concluded that she should be able to engage in sedentary work or activities.  Hartford asked Dr. Smith to review Dr. Pick's summary and provide comments or remarks.  Again, there is no evidence that the correspondence with Dr. Smith was communicated to plaintiff so that she could have the opportunity to "urge him to timely respond."  *See Saffon*, 522 F.3d at 873 n.4.

Third, Hartford incorrectly informed plaintiff that it had communicated with Dr. Smith.  Hartford told plaintiff in its April 27 letter that Dr. Pick had concluded that she was able to work, based on Dr. Pick's review of plaintiff's file, as well as "discussion with Dr. Smith."  AR0265.  Defendant now concedes that Dr. Pick never reached Dr. Smith.  *See* Def. Mot. for Summ. J. at 6. [Docket No. 25]

Finally, plaintiff applied for Social Security benefits at defendant's suggestion.  The SSA determined without appeal that she was disabled.  AR0173.  Defendant nonetheless appears not to have

given the Social Security Administration's ("SSA") decision any weight.  Under *Glenn*, the fact that defendant encouraged plaintiff to apply for benefits but then did not credit the SSA's decision is another reason to look skeptically at the plan administrator's decision.

In sum, given Hartford's inherent structural conflict, the evidence that Hartford has had biased claims administration in the past and the evidence of bias in the administrative record, the Court finds it appropriate to apply some skepticism in its abuse of discretion review.

**3.      Review of the Decision to Deny Plaintiff's Long Term Disability Benefits**

In reviewing Hartford's decision to deny plaintiff's application for continuation of her benefits, the issue is not whether plaintiff had a disabling condition at some point, but whether "defendant abused its discretion in finding plaintiff was not totally disabled" in June of 2007.  *Hoskins v. Bayer Corp. & Bus. Services Long Term Disability Plan*, 564 F. Supp. 2d 1097, 1107 (N.D. Cal. 2008).  In resolving this issue, the Court may not substitute its own judgment for that of defendant and may set aside defendant's decision only if it was arbitrary and capricious.  *Id.*  To avoid a finding that defendant's decision was arbitrary, defendant need only provide a "reasonable basis for concluding that the medical condition was not disabling."  *Id.* (quoting *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 879 (9th Cir. 2004)).  The Ninth Circuit has held that an "ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact."  *Boyd v. Bert Bell*, 410 F.3d 1173, 1178 (9th Cir. 2005).  The Court looks to the administrative record to determine whether there was a reasonable basis for defendant's decision and tempers its review with some skepticism, as described above.

In this case, Hartford denied plaintiff's claim because its independent medical doctors concluded that she could do sedentary work.  The Court notes that in their review, the doctors discounted plaintiff's complaints of pain because they were "self reported and [did] not have an objective basis."  AR0012.  Defendant admits that plaintiff included in her appeal a November 6, 2007 report from chronic pain specialist Dr. David Padgett, whom plaintiff had begun seeing regarding her pain.  *See* AR0123-25.  While doctors Fossier and Topper dismissed plaintiff's pain as "self reported," they did not attempt to

United States District Court
For the Northern District of California

reconcile their view with that of Dr. Padgett, who apparently found plaintiff's self reporting of pain to be credible. The Ninth Circuit disapproves of defendant's approach of disregarding subjective evidence of pain, especially where objective evidence is not available. *See Saffon*, 522 F.3d at 872-73; *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989) (stating that "despite our inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working. Because pain is a subjective phenomenon, moreover, it is possible to suffer disabling pain even where the *degree* of pain, as opposed to the mere *existence* of pain, is unsupported by objective medical findings.").

In addition, the Court finds that Hartford discounted reliable medical evidence that plaintiff was in fact disabled. While a defendant need not accord special weight to the opinions of a plaintiff's treating doctors, it may not "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Here, Hartford's reviewing doctors did not explain why they rejected the opinions of physicians who examined plaintiff. For example, the doctors hired by Hartford to review plaintiff's case did not explain why they did not credit Dr. Smith's opinion that plaintiff "is <u>unable</u> to do even sedentary work." AR0285 (emphasis original). Although Dr. Topper observed that "[t]he records document the evidence of degenerative spine disease," AR 0010, Dr. Fossier opined that "the findings of global weakness" were "not anatomically explainable," AR 0012. Dr. Fossier did not explain his conclusion that degenerative spine disease would not explain plaintiff's symptoms.

In light of the Court's determination that it must apply some skepticism to its abuse of discretion review, the Court concludes that defendant failed to provide sufficient justification for discrediting both plaintiff's self-reported pain and the opinions of her treating doctors. Accordingly, the Court denies both motions for summary judgment and remands the case to the claims administrator for further investigation of plaintiff's claim. *See Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1288 (10th Cir. 2002) ("The remedy when an ERISA administrator fails to make adequate findings or to explain adequately the grounds of her decision is to remand the case to the administrator for further findings or explanation."). On remand, Hartford's doctors should engage in a "meaningful dialogue" with plaintiff and her doctors so that it can make a reasoned decision regarding plaintiff's claim. Specifically, if

Hartford requests information from plaintiff's doctors, it must inform her of the request so that she may ensure that the information is delivered to Hartford in a timely manner. Similarly, if Hartford requires more documents or testing from plaintiff, it must give her adequate notice that it seeks this documentation. If Hartford's independent experts discount the conclusions of doctors who have examined her, they must give clear reasons for doing so. In addition, Hartford is directed to follow the Ninth Circuit's guidance in *Saffron* that plaintiff's self-reporting of chronic pain should not be discounted simply because her pain cannot be measured objectively. *See* 522 F.3d at 872-83.

Finally, this Court must consider whether plaintiff's benefits should be reinstated pending Hartford's reconsideration of her case on remand. The Court recognizes that if Hartford had improperly terminated plaintiff's continuing benefits, the proper remedy would be reinstatement. *See Pannebecker v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1213, 1221 (9th Cir. 2008) (explaining that if an administrator terminates continuing benefits as a result of arbitrary and capricious conduct, the "claimant should continue receiving benefits until the administrator properly applies the plan's provisions"). *Pannebecker* is inapposite here for two reasons. First, the Court has concluded that Hartford has failed to make adequate findings, not that it engaged in arbitrary and capricious conduct. Second, it appears that Hartford extended plaintiff's benefits from November 11, 2005 until they were terminated in November of 2007 "to allow for ongoing review" of plaintiff's claim. AR0167. Thus, plaintiff was not stripped of continuing benefits to which Hartford had originally found she was entitled; she was receiving benefits on a temporary basis while Hartford decided whether she was unable to work in "any" occupation. Accordingly, the Court denies plaintiff's request for the reinstatement of her benefits pending Hartford's decision on remand.

//

United States District Court
For the Northern District of California

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES both motions for summary judgment and REMANDS the case to the claims administrator for further investigation consistent with this opinion.

**IT IS SO ORDERED.**

Dated: April 6, 2009

_____
SUSAN ILLSTON
United States District Judge