IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NANCY LANGSTON,

    Plaintiff,

v.

NORTH AMERICAN ASSET DEVELOPMENT CORPORATION GROUP DISABILITY PLAN,

    Defendant.

No. C 08-02560 SI

**ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST**

Plaintiff Nancy Langston has filed motions for prejudgment interest and for attorney's fees and costs. These matters are currently set for hearing on January 22, 2010. Pursuant to Civil Local Rule 7-1(b), the Court finds plaintiff's motions appropriate for resolution without oral argument and VACATES the hearing. Having considered the papers submitted, and for good cause shown, the Court GRANTS plaintiff's motion for attorney's fees and plaintiff's motion for prejudgment interest.

**DISCUSSION**

This ERISA case arises out of the termination of plaintiff Nancy Langston's long-term disability benefits by defendant North American Asset Development Corporation Group Disability Plan ("Plan") after Hartford Insurance Company ("Hartford"), the plan administrator, found that plaintiff was no longer "disabled." In an order dated April 6, 2009, this Court determined that Hartford had failed to make adequate findings to support its decision discontinuing benefits, denied the parties' cross-motions for summary judgment, and remanded back to Hartford for further consideration of plaintiff's claim. *See* April 6, 2009 Order (Docket No. 46). The Court incorporates by reference the detailed background

set forth in that Order. Presently before the Court are plaintiff's motions for attorney's fees and costs and for prejudgment interest.

## I. Attorney's Fees and Costs

### A. Prevailing Party

"[A]s a general rule, the prevailing party on an ERISA claim is entitled to attorney's fees, 'unless special circumstances would render such an award unjust.'" *United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Employees of Asarco, Inc.*, 512 F.3d 555, 564 (9th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)). Defendant argues that plaintiff is not entitled to recover her attorney's fees and costs because she is not a prevailing party, given that this Court's April 6, 2009 Order did not hold that the claims administrator's ultimate denial of long-term disability benefits violated ERISA, but rather remanded for reconsideration of plaintiff's claim using appropriate standards. *See* April 6, 2009 Order at *14. Plaintiff contends she is a prevailing party because she obtained reinstatement of her benefits from the claims administrator as a result of the Court's remand.

For purposes of attorney's fees under ERISA, a "prevailing party" is one who achieves a judicially-sanctioned, material change in the legal relationship of the parties. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604-05 (2001); *see also Flom v. Holly Corp.*, 276 F. App'x. 615, 616 (9th Cir. 2008) (applying *Buckhannon* in ERISA context). To qualify as a prevailing party, plaintiff need not have obtained a final judgment on the merits. Rather, she must show that she obtained "a material alteration in the legal relationship between the parties" and that this material alteration was "stamped with some 'judicial imprimatur.'" *Carbonell v. I.N.S.*, 429 F.3d 894, 899-900 (9th Cir. 2005). An order remanding to an ERISA plan administrator for further consideration can meet this test, particularly where the plaintiff obtains the benefits she sought on remand. *Flom*, 276 F. App'x. at 616. This is because an order requiring the claims administrator to reconsider the plaintiff's claim for benefits constitutes success on a "significant issue in litigation which achieves some of the benefit the [plaintiff] sought in bringing suit." *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984) (internal quotation marks and citations omitted).

In this case, plaintiff's complaint alleged that claims administrator Hartford wrongfully

discontinued her disability benefits, and sought reinstatement of the benefits. The Court determined that Hartford had failed to make adequate findings in support of its decision, noting that Hartford had erred by dismissing subjective evidence of the severity of plaintiff's pain, failing to provide a justification for discounting relevant medical evidence that plaintiff was disabled, and failing to engage in a "meaningful dialogue" with plaintiff and her doctors in deciding plaintiff's claim. *See* April 6, 2009 Order at *12-13. The Court ordered Hartford to permit plaintiff to submit additional information in support of her claim, and to reconsider plaintiff's claim using the appropriate standards. After reconsidering the claim on remand, Hartford reinstated plaintiff's benefits.

In light of these circumstances, it is beyond doubt that when the Court issued its remand order, plaintiff achieved a material, judicially-sanctioned change in her relationship with the claims administrator. Hartford was required to comply with the Court's procedural mandates, and the remand ultimately led to plaintiff's success in obtaining reinstatement of her benefits. Therefore, the Court finds that plaintiff is a "prevailing party" for purposes of attorney's fees under ERISA.

### B. *Hummell* Factors

Defendant next argues that the Court should not exercise its discretion under ERISA to grant attorney's fees. *See* 29 U.S.C. § 1132(g)(1) ("In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."). The Ninth Circuit utilizes a five-part equitable test for assessing whether attorney's fees should be awarded to a prevailing ERISA plaintiff. The Court must consider

> (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell v. S. E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980). "No one of the *Hummell* factors . . . is necessarily decisive, and some may not be pertinent in a given case." *Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984). When applying the *Hummell* factors, the court "must keep at the forefront ERISA's remedial purposes that should be liberally construed in favor of

3

protecting participants in employee benefit plans." *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1172 (9th Cir. 1999) (internal quotation marks and citation omitted).

The first *Hummell* factor, bad faith, weighs slightly in plaintiff's favor. In its remand order, the Court explained that Hartford "failed to adequately investigate plaintiff's claim, failed to ask the plaintiff for necessary evidence, gave plaintiff incorrect information, and failed to credit the plaintiff's reliance evidence." April 6, 2009 Order at *10. The Court went on to explain at great length how Hartford's investigation and handling of plaintiff's claims had contravened Ninth Circuit authority. Defendant makes much of the fact that the words "bad faith" do not appear in the Court's remand order. Although that is true, the Court's findings do reveal a level of culpability on Hartford's part, which weighs in favor of granting fees.

As to the second factor, Hartford concedes that it is able to pay any fees awarded. Hartford contends that this factor alone cannot support an award of fees. However, the Ninth Circuit has suggested that, at the very least, a court should accord great weight to the claims administrator's ability to pay. *See Smith*, 746 F.2d at 590 ("Based on this factor alone, absent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant."). Accordingly, Hartford's conceded ability to pay a fee award weighs strongly in favor of granting fees.

The third *Hummell* factor concerns the deterrence value of the fee award. Defendant contends in rather conclusory fashion that "there is no evidence that an award of fees would deter Hartford or other insurers from acting in similar circumstances," given that the "decision here was based on the particular facts in plaintiff's claim file." Oppo. at 6-7. Defendant's view is overly narrow. A fee award would underscore the fact that ERISA plan administrators must conduct adequate investigation and review before discontinuing a plan participant's benefit. This factor therefore weighs in plaintiff's favor.

With respect to the fourth factor, defendant is correct that plaintiff sought only individual benefit in this matter, and did not raise a "significant legal question regarding ERISA." *See Hummell*, 634 F.2d at 453. Plaintiff's suit confers some benefit on other plan participants, who might be more willing to seek judicial review of denials of meritorious claims as a result of plaintiff's experience. *See Mardirossian v. Guardian Life Ins. Co. of Am.*, 457 F. Supp. 2d 1038, 1045 (C.D. Cal. 2006) ("Although

4

[plaintiff] did not seek benefits on behalf of other plan participants or for the plan as a whole, his initiative in challenging the plan's decision will benefit participants whose claims might otherwise be denied[.]"). On balance, the Court finds that this factor is neutral or tilts very slightly in plaintiff's favor.

The final *Hummell* factor concerns the relative merits of the parties' positions. This factor weighs in favor of a fee award because, as discussed above, Hartford reinstated plaintiff's benefits after reconsidering her claim under the Court's instructions as to the correct standard. Thus, because each of the *Hummell* factors is either neutral or weighs in plaintiff's favor, the Court concludes that an award of attorney's fees in this case is appropriate.

### C. Calculation of Fees

Once a party has established that it is entitled to attorney's fees, the district court must decide what amount is reasonable. *Hensley,* 461 U.S. at 433. In ERISA cases, reasonable attorney's fees are calculated using a "hybrid lodestar/multiplier approach." *McElwaine*, 176 F.3d at 1173. The lodestar figure is determined by multiplying "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The party seeking an award must submit evidence supporting the hours worked and the rates requested. *Id.* at 434. In determining the number of hours reasonably expended, the court should exclude hours that are "excessive, redundant, or otherwise unnecessary." *Id.* In determining the reasonableness of the hourly rate requested, the court should consider the "novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, and the results obtained." *Mardirossian*, 457 F. Supp. 2d at 1046 (citing *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1988)).[1]

Plaintiff seeks a total of $160,285 in attorney's fees. She claims 128.1 past hours and 10 future hours of work by attorney Laurence Padway at a rate of $550 per hour, 181.8 hours by attorney Gayle

---

[1] After determining the "presumptively reasonable" lodestar fee, the court may adjust the award upward or downward in a rare case using a "multiplier" based on a number of other factors. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975); *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994). Defendant does not contend that such an adjustment is appropriate here, but rather directs its argument toward the calculation of the lodestar. Accordingly, the Court will focus on the lodestar amount as well.

Codiga at a rate of $450 per hour, and 16.8 hours by paralegal Felicia Phillips at a rate of $150 per hour.[2] Defendant challenges both the number of hours claimed and the hourly rates sought, and asserts that plaintiff should only be awarded $53,178.20 – 72.32 hours by Mr. Padway at the rate of $400 per hour, 96.68 hours by Ms. Codiga at $240 per hour, and 12.75 hours by Ms. Phillips at $100 per hour.

### 1. Number of Hours

Defendant contends that the number of hours claimed should be reduced because some of the time spent was duplicative, excessive, or unnecessary and irrelevant to this action.[3] First, defendant asserts that plaintiff cannot claim for hours spent on the administrative remand. It is unsettled in the Ninth Circuit whether an ERISA plaintiff may recover attorney's fees for work related to administrative review pursuant to a court-ordered remand. The parties cite a number of district court cases and a Second Circuit case addressing whether fees are available in this context. Defendant points to one case in which recovery of fees incurred during administrative remand proceedings was denied. *See Kniespeck v. Unum Life Ins. Co. of Am.*, No. 01-0878, 2007 WL 496346 (E.D. Cal. Feb. 13, 2007), *vacated by* 2009 WL 3320289 (E.D. Cal. Oct. 14, 2009). However, it appears to the Court that the general consensus among other district courts is that hours spent representing a plan participant in a court-ordered remand proceeding are recoverable. *See, e.g.*, *Peterson v. Cont'l Cas. Co.*, 282 F.3d 112, 122 (2d Cir. 2002) ("[W]e see no reason that a party may not recover costs incurred during an administrative remand ordered by a court"); *Benson v. Cont'l Cas. Co.*, 592 F. Supp. 2d 1274 (C.D. Cal. 2009) (same); *Seal v. John Alden Life Ins. Co.*, 437 F. Supp. 2d 674 (E.D. Mich. 2006) (granting fees for work done on remand where purpose of remand was "so that the plan administrator would have the first opportunity to set things right"); *see also Johnson v. Prudential Ins. Co. of Am.*, No. 06-0130, 2008 WL 901526 (S.D. Tex. Mar. 31, 2008) (granting fees for hours spent pursuant to party-stipulated remand, and noting that other district court cases "recognize that fees are generally available for

---

[2] Plaintiff initially requested an additional $5625, based on 4.5 more hours by Mr. Padway and 7 more hours by Ms. Codiga. In her reply brief, plaintiff subtracted these amounts from her request.

[3] Defendant also asserts that plaintiff's claimed hours should be reduced because she did not prevail. As addressed above, the Court disagrees and therefore will not address this assertion here.

6

administrative reviews that occur after litigation has begun"). Accordingly, the Court finds that the hours claimed for time spent during the post-remand administrative proceedings are recoverable.[4]

Second, defendant identifies several purportedly "duplicative and excessive" time entries it argues should be excluded from plaintiff's fee request. One of defendant's objections is addressed below in the Court's discussion of block-billing (the 6.1 hours of research performed by Mr. Padway on January 16, 2009). Defendant next objects to the time spent by both attorneys on file review. The Court has examined the entries recorded by Mr. Padway and Ms. Codiga and does not find that the time spent on reviewing different portions of the file at different points throughout the proceedings was unreasonable. In fact, the Court identified numerous instances in which counsel redacted time they identified as duplicative. Next, defendant asserts that the Court should strike duplicative time recorded by Ms. Codiga on February 5 and February 12, 2009. Although defendant is correct that both these entries pertain to preparation of plaintiff's summary judgment reply brief, the February 5 entry reflects 4 hours for preparation of the reply brief outline, with review of the administrative record, and the February 12 entry reflects 4 hours for writing the brief. The Court does not believe that these entries are duplicative, or that 8 hours of work is an excessive amount of time to devote to a reply brief. The Court will, however, subtract 4.2 hours recorded by Ms. Codiga on February 13, 2009 to "prepare draft of 30 page reply brief." This time was entered the same day plaintiff's *7-page* reply brief was filed, and immediately follows an entry reflecting 5.5 hours of time to "*finalize* reply brief with exhibits." Plaintiff does not explain these discrepancies, and the Court can only assume the entry was made in error. Defendant's final challenge to purportedly duplicative time relates to both attorneys' preparation for and attendance at oral argument on the parties cross-motions for summary judgment. The Court rejects

---

[4] The Court is cognizant of the fact that the *Peterson* decision speaks of fees incurred during a court-ordered remand where the court "retain[ed] jurisdiction over the action during the pendency of the administrative proceedings." 282 F.3d at 122. Although this Court closed the case during the pendency of the administrative proceedings, the Court did not issue a judgment against either party, and would have retained jurisdiction to consider an appeal from an adverse decision. As such, the distinction is of no moment under the circumstances of this case. The Court further rejects defendant's attempt to distinguish the cases contrary to its position on the ground they involved remand after the court found that the claims administrator abused its discretion by denying the plan participant's claim for benefits. Here, Hartford was required to undertake a new substantive review of plaintiff's claim after the Court's remand, and as such, the remand proceeding may be considered "part of the 'civil action' for purposes of a fee award." *Sullivan v. Hudson*, 490 U.S. 877, 892 (1989).

7

defendants' suggestion that it is somehow unreasonable for two attorneys to prepare for and attend a hearing on cross-motions for summary judgment in a heavily-contested ERISA action and will not subtract any of this time.

Third, defendant challenges hours spent performing research related to evidence that was ultimately stricken from the record or expressly excluded from consideration by the Court. This includes 23.4 hours of medical research by Mr. Padway, 2.3 hours by Mr. Padway and 19.5 hours by Ms. Codiga on research related to Hartford's settlement with the Department of Insurance, and 4.5 hours by Ms. Codiga reviewing the deposition transcripts of Dr. Pick, one of Hartford's consulting physicians. The Court agrees with defendant that plaintiff is not entitled to recovery of fees for time spent in preparation of materials that were stricken from the record as improper or inadmissible due to counsel's own errors, including the time researching the settlement and the time reviewing Dr. Pick's deposition transcripts.[5] Accordingly, <u>2.3 hours of Mr. Padway's time and 24 hours of Ms. Codiga's time will be subtracted from plaintiff's request</u>. However, plaintiff correctly points out that the medical articles it offered as a result of counsel's research were potentially admissible, though outside the administrative record, as evidence bearing on the "consideration of complex medical questions or issues regarding the credibility of medical experts." *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1027 (4th Cir. 1993)). Accordingly, this time was not unreasonably spent and is recoverable.

Fourth, defendant asserts that multiple entries in plaintiff's fee bills were block-billed. The Court agrees that certain entries, including Ms. Codiga's August 13, 2008[6] and April 7, 2009[7] entries,

---

[5] The Court declined to consider evidence regarding the settlement because it was presented for the first time with plaintiff's reply brief, and the Court struck Dr. Pick's deposition transcripts from the record as inadmissible due to failure to authenticate. *See* April 6, 2009 Order at *9 & n.7.

[6] "letter to Rolstad regarding Social Security Disability benefits award letter, various letters from social security to Nancy Rolstad, State Compensation Insurance Fund benefits paid printout dated June 6, 2008 and EDD explanation of Benefit payment record dated June 20, 2007; Review Plaintiff's Initial Disclosures for Accuracy and Completeness"

[7] "review court order denying cross motions for summary judgment and remanding case to Hartford; telephone conversation with client and develop a game plan to identify the evidence which needs go to Hartford to prove Nancy Langston's disability."

8

1 and Mr. Padway's January 16,[8] January 19,[9] and April 6, 2009[10] entries, combine disparate tasks into single entries and therefore constitute block-billing. Accordingly, <u>the total number of hours listed in these entries will be reduced by 20%, from 5.25 hours to 4.2 hours for Ms. Codiga (1.05 hour reduction), and from 23.8 hours to 19 hours (4.8 hour reduction) for Mr. Padway</u>. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). However, the Court does not find that Ms. Codiga's January 14 and January 16, 2009 entries or Mr. Padway's January 18 and April 17, 2009 entries constituted block billing, as these entries involved relatively cohesive research tasks that do not make it "impossible to evaluate their reasonableness." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004). Accordingly, these entries will not be reduced.

Fifth, defendant challenges two instances of time billed at an attorney or paralegal rate for work it argues was secretarial or clerical in nature. This includes 3.8 hours spent by Ms. Phillips on scheduling and confirming appointments, calendaring events, and preparing copies, and 1.2 hours spent by Ms. Codiga on preparing the fee agreement and opening letters. The Court agrees that this time should not have been billed at an attorney or paralegal rate. With respect to Ms. Codiga's time, plaintiff has failed to show how that this work was not clerical in nature. With respect to Ms. Phillips' time, plaintiff presents evidence that the tasks performed were within the usual scope of a paralegal's responsibilities. *See* Suppl. Phillips Decl. ¶ 4.[11] Although the Court does not challenge this assertion, it is not enough for plaintiff to show that the challenged tasks are often performed by paralegals. The

---

[8] "Review Social Security disability guidelines and compare to ERISA; research AMA Impairment guide and Reed Review guide; research of disability from failed spinal surgery (part of this work has been done previously and is an update) . . . ."

[9] "Medical research on success rates for fusions, and malingering issues, review of Report of the Commission on the Eval of Pain, Pain Medicine Principles, Wall and Melzak and internet research; complete rewrite of motion for summary judgment and prepare[] declaration of L Padway"

[10] "Review order denying cross motions and research re appealability of order of remand, [Snow, Hensley etc] and preliminary research on attorneys fees following remand"

[11] Although defendant contends the Court should not consider this new evidence submitted for the first time with plaintiff's reply brief, the Ninth Circuit has suggested that a district court "may consider new evidence presented in a reply brief if the district court gives the adverse party an opportunity to respond." *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1041 (9th Cir. 2003) (citing *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996)). The Court will consider plaintiff's new evidence because defendant was expressly provided an opportunity to respond to plaintiff's submission.

9

rule in the Ninth Circuit is that clerical tasks "should not be billed at the paralegal rate, regardless of who performs them." *Trustees of Constr. Indus. & Laborers' Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006); *see also Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (clerical work should be "subsumed in firm overhead rather than billed at paralegal rates."). As plaintiff has not shown that the challenged tasks were other than clerical in nature, the Court finds that they should not have been billed at Ms. Phillips' hourly rate. Although the Court has the discretion to eliminate the time devoted to clerical tasks from the request, *see Nadarajah*, 569 F.3d at 921, defendants have suggested that a rate of $40 per hour is appropriate. The Court will therefore reduce 1.2 hours of Ms. Codiga's time and 3.8 hours of Ms. Phillips' time to an hourly rate of $40.

Finally, defendant challenges several instances of time apparently billed due to error. Plaintiff agreed in her reply brief that 4.5 hours erroneously billed on February 28, 2009 should be stricken, as these hours reflect time spent on oral argument preparation the day after oral argument had taken place. Plaintiff further agreed that 7 hours of Ms. Codiga's non-billable time that was inadvertently billed should be stricken from her request. Plaintiff's concession appears to leave out .5 hours of Ms. Codiga's non-billable time, and this time will be subtracted from her request.

In sum, plaintiff's requested totals of 138.1 hours by Mr. Padway, 181.8 hours by Ms. Codiga, and 16.8 hours by Ms. Phillips will be reduced to 131 hours for Mr. Padway, 150.85 hours for Ms. Codiga, 13 hours for Ms. Phillips, and 5 hours at a secretarial rate of $40.

### 2. Hourly Rate

Defendant challenges Mr. Padway's claimed rate of $550 per hour, Ms. Codiga's claimed rate of $450 per hour, and Ms. Phillips' claimed rate of $150 per hour. Defendant asserts that plaintiff has not submitted sufficient evidence to show that these rates are reasonable, and requests that the rates be reduced to $400 per hour for Mr. Padway, $240 per hour (60% of Mr. Padway's rate) for Ms. Codiga, and $100 per hour for Ms. Phillips.

In determining a reasonable hourly rate for purposes of an ERISA fee award, the party seeking fees must establish that the rate sought is in line with "the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar

10

1 complexity." *Welch*, 480 F.3d at 946 (citation omitted). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Once the party seeking fees has established that the rate sought is "in line with prevailing community rates," that rate is presumed reasonable but may be adjusted "on evidence that undermines the reasonableness of the rate requested." *Welch*, 480 F.3d at 947-48.

In support of the $550 per hour rate requested for Mr. Padway, plaintiff submits a number of declarations, including one from Mr. Padway, several from other attorneys practicing ERISA law, and one from an expert on California attorney's fee awards, all of which state that $550 is a reasonable rate for ERISA work as of 2009. As defendant points out, however, none of these declarations establish what the attorneys in question actually charge paying clients for ERISA cases of similar complexity. Rather, the declarations seem to establish only a hypothetical "market-supported" rate based primarily on the amounts awarded by prior courts, who in turn were relying on fee award amounts in the decisions before them. This Court is hesitant to contribute to this self-perpetuating pattern. In light of the circumstances of this case, including counsel's skill and the present economic downturn, the Court finds that a <u>reasonably hourly rate for Mr. Padway's services is $400 per hour.</u>

Ms. Codiga's requested $450 hourly rate is supported by even less evidence. Ms. Codiga's declaration includes no information regarding what she charges clients in cases similar to this one, nor has plaintiff submitted any evidence establishing the prevailing market rate for an attorney of Ms. Codiga's skill and experience, other than a conclusory assertion by a California attorney fee award expert that Ms. Codiga's rate is "well in line with the non-contingent market rates charged by attorneys of similar background, experience, and reputation for similar services in the Bay Area." Pearl Decl. ¶ 10. Moreover, the evidence submitted by plaintiff's expert shows that the rates charged in 2008 and 2009 by other firms in the Bay Area for associates with four years of experience ranged from $250 (Cohelan & Khoury, 2008) to $340 (Goldstein Demchak Baller Borgen & Dardarian, 2009). *Id.* ¶10b. Accordingly, the Court finds that a <u>reasonable hourly rate for Ms. Codiga's services in this case is $300 per hour.</u>

11

Finally, plaintiff seeks $150 per hour for services performed by Ms. Phillips. Ms. Phillips submits a declaration stating that she has billed clients in the past at an hourly rate of $150, *see* Phillips Decl. ¶ 3, and plaintiffs submit further evidence that rates ranging from approximately $100 to $200 dollars are commonly charged by other firms in the Bay Area, *see* Pearl Decl. ¶ 10b. As defendant does not seriously contend that this rate is unreasonable, the Court <u>awards $150 per hour for Ms. Phillips' paralegal services</u>.

Multiplying the approved rates by the approved number of hours, the Court <u>awards plaintiff attorney's fees in the total amount of $99,805 </u>($52,400 for Mr. Padway's services (131 hours x $400 per hour), $45,255 for Ms. Codiga's services (150.85 hours x $300 per hour), $1950 for Ms. Phillips' services (13 hours x $150 per hour), and $200 in secretarial work (5 hours x $40 per hour)).

### D. Calculation of Costs

Plaintiff requests a total of $2155.94 in costs, including money spent on Westlaw and PACER fees, faxing/copying/scanning, and postage.[12] Under ERISA, the Court has discretion to award the prevailing party the "costs of action." 29 U.S.C. § 1132(g)(1). The Ninth Circuit has held that this provision "empowers courts to award only the types of 'costs' allowed by 28 U.S.C. § 1920," the statute governing taxation of costs. *Agredano v. Mut. of Omaha Cos.*, 75 F.3d 541, 544 (9th Cir. 1996). 28 U.S.C. § 1920 allows recovery of:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The Ninth Circuit has also held that certain types of litigation expenses not included in 28 U.S.C. § 1920 may be billed as attorney's fees in ERISA cases as long as "it is the prevailing practice in a given community for lawyers to bill those costs separately from their hourly rates." *Trustees*, 460 F.3d at 1258 (internal quotation marks and citation omitted).

Defendant challenges plaintiff's request for recovery of approximately $1200 associated with

---

[12] Plaintiff initially claimed an additional $600 in expert fees but has withdrawn that request.

12

computer-based legal research. In the Ninth Circuit, "reasonable charges for computerized research may be recovered as 'attorney's fees' under [ERISA] if separate billing for such expenses is the prevailing practice in the local community." *Id.* at 1259 (citation omitted). Mr. Padway's supplemental declaration asserts that it is the prevailing practice in the Northern District of California or other relevant local community to bill clients separately for Westlaw charges. *See* Suppl. Padway Decl. ¶ 8. Defendant does not refute this assertion, and the Court was able to locate at least one recent decision from this district in which Westlaw-related charges were awarded separately. *See Limo Hosting v. Fiks*, No. 08-2474, 2010 WL 55876, at *3 (N.D. Cal. Jan. 4, 2010). Accordingly, plaintiff's requested charges of $1211.44 will be awarded.

Defendant next challenges plaintiff's request for $539 for faxing, copying, and scanning charges. 28 U.S.C. § 1920(4) provides that recoverable costs include copying charges "where the copies are necessarily obtained for use in the case." In turn, Civil Local Rule 54-3(d) allows for recovery of costs related to copying government records, disclosure or discovery documents, trial exhibits when copies are required by a judge, and visual aids "if such exhibits are reasonably necessary to assist the jury or the Court in understanding the issues at the trial." Rule 54-3(d) expressly provides, however, that the "cost of reproducing copies of motions, pleadings, notices, and other routine case papers is not allowable." *Id.* Plaintiff's cost bill does not break down the copying charges claimed, but simply lists "3850 @ .14 = 539." Accordingly, the Court finds it appropriate to reduce the claimed copying costs by 25% ($134.75), for a total of $404.25.

Finally, defendant challenges plaintiff's claim for $12 spent on PACER fees and $43.50 spent on postage. Plaintiff asserts that such out-of-pocket litigation expenses are normally billed separately to clients, and defendants offers no contrary evidence or authority. The Court finds that the claimed expenses are reasonable and recoverable. *See Frank v. Wilbur-Ellis Co. Salaried Employees Ltd. Plan*, No. 08-284, 2009 WL 2579100, at *8-9 (E.D. Cal. Aug. 19, 2009) (awarding postage and PACER costs in ERISA case).

In sum, plaintiff is awarded costs in the amount of $2021.19.

13

## II. Prejudgment Interest

Pursuant to statute, "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "Whether to award prejudgment interest to an ERISA plaintiff is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." *Landwehr. v. DuPree*, 72 F.3d 726, 739 (9th Cir. 1995) (internal quotation marks and citation omitted). In calculating the rate of prejudgment interest to be awarded, the court should award the rate prescribed by 28 U.S.C. § 1961 – the Treasury bill or "T-bill" rate – unless the court "finds, on substantial evidence, that the equities of that particular case require a different rate." *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1164 (9th Cir. 2001).

Defendant argues that plaintiff is not entitled to prejudgment interest because she is not a prevailing party. The Court has rejected that position in detail above. Because defendant makes no additional arguments against an award of prejudgment interest, the Court will address whether plaintiff is entitled to be compensated at the 10% rate she requests, rather than the presumptive federal T-bill rate.

Plaintiff asserts that an increased interest rate is warranted in this case due to the financial strain placed on her as a result of loss of her benefits from July 2007 to August 2009. Plaintiff's declaration describes the interest rates on her six credit cards and her home mortgage, and states that as a result of the discontinuation of her disability benefits, her family was unable to do needed home repairs and upkeep. Langston Decl. ¶¶ 5-6. The Court is sympathetic to plaintiff's financial troubles and recognizes that interest on plaintiff's back benefits is warranted as an element of compensation. However, most, if not all, ERISA plan participants whose benefits are terminated suffer financial setbacks as a result, and plaintiff has not demonstrated that the equities of her situation warrant departing from the "norm" of awarding interest at the T-bill rate. *See Grosz-Salomon*, 237 F.3d at 1164.[13]

The T-bill rate for purposes of prejudgment interest is the weekly average one-year constant

---

[13] Plaintiff cites *Arnett v. Hartford Life & Accident Ins. Co.*, No. 05-01527, 2006 WL 5781982 (C.D. Cal. Dec. 19, 2006), in support of her argument that the Court should award prejudgment interest at California's statutory 10% rate. *See* Cal. Ins. Code § 10111.2. However, that award was justified by the equities present in that case, including the fact that the district court had granted summary judgment in plaintiff's favor after finding that the plan administrator's termination of benefits was "unreasonable," *see Arnett*, 2006 WL 5781982, at *5, and is therefore unpersuasive in the instant context.

14

maturity Treasury yield for the calendar week preceding the Court's April 6, 2009 Order. *See* 28 U.S.C. § 1961(a), is 0.48%. For the week ending April 3, 2009, the applicable rate is 0.58%. *See* Federal Reserve Statistical Data, Selected Interest Rates, Treasury Constant Maturities, *available at* http://www.federalreserve.gov/releases/H15/data/Weekly_Friday_/H15_TCMNOM_Y1.txt. "Interest shall be computed daily to the date of payment . . . , and shall be compounded annually." 28 U.S.C. § 1961(b). According to the Court's calculation, the interest due on plaintiff's $70,954 in back benefits, calculated through January 31, 2009, is $1067.88.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for attorney's fees and costs and plaintiff's motion for prejudgment interest are GRANTED (Docket Nos. 59, 56). Plaintiff is awarded $99,805 in fees, $2021.19 in costs, and $1067.88 in prejudgment interest.

**IT IS SO ORDERED.**

Dated: January 20, 2010

SUSAN ILLSTON
United States District Judge